# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JOE HAND PROMOTIONS, INC., | |
| Plaintiff, | |
| v. | No. 11 C 4319<br>Judge James B. Zagel |
| DRITAN ZANI, et al., | |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Joe Hand Promotions, Inc. has brought this action against Defendants Dritan Zani and Euro Star Café, Inc. for a violation of 47 U.S.C. § 605. Plaintiff now moves for summary judgment as to both liability and damages. For the following reasons, Plaintiff's motion is granted in part and denied in part.

## BACKGROUND

Plaintiff was the exclusive domestic commercial distributor of the transmission signal of the December 11, 2010, telecast of *Ultimate Fighting Championship 124: St-Pierre vs. Koscheck 2* ("The Event"). These rights included all undercard bouts and the entire television broadcast. Plaintiff makes its money by entering into agreements with commercial entities to permit their display of the Broadcast. The rates are determined based on the capacity of each establishment; in this case the rate would have been $1,300.00.

Plaintiff's primary revenue source is the sublicense fees it charges to commercial establishments to broadcast programming. Plaintiff states it has lost millions due to unauthorized broadcasts. Plaintiff alleges that it has lost and will continue to lose customers due to the unauthorized exhibition of its programs, in part because the commercial establishments that

1

properly purchase rights cannot make money as a result. Moreover, Plaintiff states that the unauthorized exhibition of its program damages its goodwill and reputation because it cannot provide customers with an accurate list of locations that are showing an event.

Abram Gale Sports Bar is located at 2366 N. Neva, Chicago, Illinois 60707 and has a capacity of 168 persons. Defendants admit to showing the Event in the bar without a proper license. The event was advertised on Facebook and Twitter, but Defendants say they reached just nine followers.

Defendants state that Direct TV came to the bar to set up the account. It appears that Direct TV mistakenly gave Defendants a residential account, though Defendants assert that this was not made clear to them until this lawsuit was filed. Direct TV sent bills directly to the bar, and Defendants assert that they were unaware there were different rates for residential and commercial accounts. Further, Defendant Zani states that he has no residential satellite television service with Direct TV in his home. It is uncontested that Defendants purchased the Event from Direct TV as a Pay-Per-View event and paid the rate they were charged, which was the residential fee.

## DISCUSSION

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "On summary judgment the inferences to be drawn from the underlying facts…must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962); *Bell v. EPA*, 232 F.3d 546, 549 (7th Cir. 2000).

The evidence relied upon in defending a motion for summary judgment must be admissible at trial, although the court may consider sworn testimony. *Hemsworth v.*

*Quotesmith.Com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007). Moreover, the moving party must provide specific facts and cannot rely solely on the pleading: "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986).

## A. Liability

47 U.S.C. § 605(a) essentially provides for strict liability. *See King Visiont Pay-Per-View Ltd. v. Lake Alice Bar*, 168 F.3d 347, 349 (9th Cir. 1999). By their admission, Defendants violated § 605(a) when they commercially published the Event after having been charged only the residential rate. Section 605(a) provides in relevant part:

> [N]o person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception, (1) to any person other than the addressee, his agent, or attorney

It is undisputed that Defendants did not pay the proper fee for commercial use of the broadcast. Publication of the broadcast to patrons in the bar was thus unauthorized, resulting in a violation of § 605(a). Summary judgment in favor of Plaintiff as to liability is therefore appropriate.

## B. Damages

Plaintiff has also moved for summary judgment as to damages under both 47 U.S.C. § 605(e)(3)(C)(i)(II) and 47 U.S.C. § 605(e)(3)(C)(ii). Because Plaintiff has not alleged sufficient undisputed facts to support its damages request under either section of the statute, Plaintiff's motion for summary judgment is denied as to damages.

1. Damages Under 47 U.S.C. § 605(e)(3)(C)(i)(II)

Section 605(e)(3)(C)(i)(II) permits a plaintiff to recover a statutory damages award for

each violation of § 605(a) "in a sum of not less than $1,000 or more than $10,000, as the court considers just." Plaintiff asks that I award the maximum amount allowable under the statute, but has not offered sufficient evidence to persuade me that an award of even the minimum amount would be just.

Plaintiff notes the lost licensing fee, and asserts it has been deprived of the "value, benefits and profits derived from the unauthorized broadcast of the Event." Plaintiff further claims the loss of customers due to the unauthorized exhibition of its programs, in part because those commercial establishments that purchase proper rights cannot make money when they must compete with unauthorized exhibitors. Plaintiff explains that its primary revenue source is the sublicense fees it charges commercial establishments to broadcast programming. If legitimate customers stop purchasing licenses, Plaintiff will suffer losses. Plaintiff also makes broad claims of damage to its goodwill and reputation caused by its inability to give customers a list of locations that will exhibit a given event.

Aside from the lost licensing fee, however, these claims for loss are insufficiently supported. Whether and to what extent Plaintiff has sustained losses as a result of this sort of unauthorized use generally, or this instance of unauthorized use involving Defendants in particular, is not at all clear from Plaintiff's motion. Indeed, Defendants make uncontested assertions suggesting that an award of as little as $250 under § 605(e)(3)(C)(iii) may be far more appropriate.[1]

2. Damages Under 47 U.S.C. § 605(e)(3)(C)(ii)

Section 605(e)(3)(C)(ii) permits a court to increase a damage award by as much as $100,000 where the violation was "committed willfully and for purposes of direct or indirect commercial advantage or private financial gain." Plaintiff asks for an additional award of

---

[1] See note 2, *infra*, and accompanying text.

$50,000 under this section, but has not sufficiently shown that Defendants acted willfully.

Plaintiff cites to *ON/TV of Chicago v. Julien*, 763 F.2d 839, 844 (7th Cir. 1985), where the Seventh Circuit defined a willful violation of a statute in the civil context as "disregard for the governing statute and an indifference to its requirements." *See also Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 128-29 (1985) (holding that this is an "acceptable" way to articulate a definition of "willful," but rejecting the lower court's application of the standard). In *Trans World Airlines*, the Supreme Court case on which the Seventh Circuit relied, the Court held that in order for a violation of a statute to be willful, the defendant must "know" that his conduct would violate the statute, or he must recklessly disregard the statutes requirements. *Trans World Airlines*, 469 U.S. at 129-30.

Defendants assert that they were unaware that their Direct TV account was set up in potential violation of § 605(a). They assert that Direct TV mistakenly installed their service as a residential account without their knowledge, and they assert that they had no reason to know that the fee they paid upon purchasing the Event was not the proper fee. These assertions stand uncontroverted.

Plaintiff asserts that "Defendants could not have 'innocently' accessed the broadcast of the Event, and therefore, it is certain that Defendants specifically and willfully acted to illegally intercept the transmissions of the Event for Defendants' commercial advantage." But Plaintiff does not explain why this must be so. Plaintiff further asserts that it is "certain" that Defendants took "affirmative untoward actions" to bypass safeguards in place to protect satellite programming, but, again, Plaintiff does not explain why.

Plaintiff points to courts that have found willfulness where a defendant violates the Federal Communications Act "for the purposes of direct or indirect commercial advantage or

private financial gain**."** *Kingvision Pay–Per–View, Ltd. v. Admiral's Anchor, Inc. No. 2,* 172 F. Supp. 2d 810, 812 (S.D.W. Va. 2001); *Time Warner Cable v. Googies Luncheonette, Inc.,* 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999); *Time Warner Cable of New York City v. Taco Rapido Rest.,* 988 F. Supp. 107, 111 (E.D.N.Y. 1997). But these are cases in which default judgments were entered against the defendants, and in which the courts accepted all allegations - including willfulness - as true.

Notably, however, in cases like the one currently before the Court, where the defendant was mistakenly charged the residential rate, where the defendant was apparently unaware that a mistake had been made, and where the defendant paid the fee he was actually charged, courts have opted to award only $250 in damages, as provided for in § 605(e)(3)(C)(iii).[2] These courts have generally reasoned that the error on the part of the cable company, without more, suggests an absence of willfulness on the part of the defendant. *See Joe Hand Promotions, Inc. v. That Place, LLC*, 2012 WL 2525653 at *5 (E.D. Wis. June 29, 2012); *Joe Hand Promotions, Inc., v. Kennedy*, 2012 WL 1068789 at *2 (N.D. Ohio Mar. 29, 2012); *Joe Hand Promotions, Inc. v. Marshall*, 2012 WL 300542 at *4 (M.D. Tenn. Feb. 1, 2012).

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is granted in part and denied in part. Consistent with this opinion, the Court hereby orders a damages hearing to be held on 11/20/13 at 10:30 a.m.

---

[2] Section 605(e)(3)(C)(iii) permits a court, in its discretion, to reduce an award of damages to a sum of not less than $250 "where the court finds that the violator was not aware and had no reason to believe that his acts constituted a violation of this section."

ENTER:

James B. Zagel
United States District Judge

DATE: October 7, 2013